# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

HEATHER McCLANAHAN,                           Case No. 1:10-cv-651

      Plaintiff,                                Spiegel, J.
                                          Bowman, M.J.

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Heather McClanahan filed this Social Security Appeal in order to challenge the Defendant's findings that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes.  For the reasons explained below, I conclude that the ALJ's finding of non-disability should be REVERSED, because it is not supported by substantial evidence in the administrative record.

### I.  Summary of the Administrative Record

On May 27, 2006, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging a disability onset date of October 1, 2005, due to a bad back, fibromyalgia, seizures, and depression.  (Doc. 9-5 at 2-6, Doc. 9-6 at 7).  After Plaintiff's claims were denied initially and upon reconsideration, (Doc. 9-3 at 2-3; Doc. 9-4 at 3-10), she requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  (Doc. 9-4 at 11).  On September 1, 2009, an evidentiary hearing was held, at which Plaintiff was represented by

counsel.  (Doc. 9-2 at 46-119).  At the hearing, ALJ Thaddeus J. Armstead Sr. heard testimony from Plaintiff, H.C. Alexander III, M.D., an impartial medical expert ("ME"), and Mark Pinti, a vocational expert ("VE").  On November 9, 2009, ALJ Armstead entered his decision denying Plaintiff's DIB application.  (Doc. 9-2 at 25-37).  The Appeals Council denied her request for review.  (Doc. 9-2 at 2-4).  Therefore, the ALJ's decision stands as the Defendant's final determination.

In the ALJ's "Findings," which represent the rationale of his decision, ALJ Armstead determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2011, that she has not engaged in substantial gainful activity since October 1, 2005, and that she has the following severe impairments: post laminectomy syndrome; history of seizures; and moderate depression.  (Doc. 9-2 at 28).  The ALJ determined that none of Plaintiff's impairments, or combination thereof, meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§404.1520(d), 404.1525, and 404.1526.  The ALJ next determined that Plaintiff retains the residual functional capacity

> to perform light work as defined in 20 CFR 404.1567(b).  Giving the claimant the full benefit of doubt with regard to her allegations and subjective complaints, it is found that she requires the following additional nonexertional restrictions: no climbing ladders, ropes, or scaffolding; no more than occasional crouching and stooping – all other postural can be performed on a frequent basis; no exposure to hazards such as, or similar to, unprotected heights and dangerous machinery; simple and complex tasks that are fairly static in nature – changes [that] can be easily explained.

(Doc. 9-2 at 32).

Plaintiff was 39 years old at the time of the ALJ's decision, and has an associate's degree in nursing.  (Doc. 9-2 at 36, 57).  Although the ALJ determined that Plaintiff could

not perform her prior work as a registered nurse, he concluded based upon testimony from the vocational expert that:

> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a)).

(Doc. 9-2 at 36). Therefore, the ALJ concluded that Plaintiff was not under a  disability as defined by the Social Security Regulations and was not entitled to DIB.

On appeal to this court, Plaintiff maintains that ALJ Armstead erred by: 1) improperly rejecting the opinion of Plaintiff's treating psychiatrist, and 2) inadequately assessing Plaintiff's pain and credibility.  (Doc. 18 at 11, 17).

## II. Analysis

### A. Judicial Standard of Review

To be eligible for DIB or SSI benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.  A plaintiff bears the ultimate burden to prove by sufficient

evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a).

In this case, Plaintiff argues that the referenced two errors led the ALJ to erroneously conclude at Step 5 of the sequential analysis that Plaintiff was not disabled. I agree that the ALJ committed legal error, and that remand is required to remedy the error.

### B. Plaintiff's Assertions of Error

### 1. The ALJ's Rejection of Dr. Moon's Opinions

In her first assignment of error, Plaintiff complains that ALJ Armstead improperly rejected the findings and conclusions of her treating psychiatrist, Dong S. Moon, M.D. ("Dr. Moon") in favor of opinions given by less qualified state consultants. 20 C.F.R. §404.1527(d)(2) provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id. See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004).

Dr. Moon, who first examined Plaintiff in May 2006, opined on several occasions in 2007 and 2008 that Plaintiff would be unable to maintain employment due to a combination of her depression and chronic physical pain.[1] At the evidentiary hearing, Plaintiff also represented that she was asserting disability primarily due to her chronic pain and associated depression. (Doc. 9-2 at 115). Although Dr. Moon did not treat Plaintiff for physical symptoms, he repeatedly explained that Plaintiff's chronic pain heightened her depression, and vice versa, resulting in disability. (*See, e.g.,* Doc. 9-8 at 223, 3/22/07 note

---

[1] Dr. Nestor, Plaintiff's treating primary care physician, also opined that Plaintiff was disabled. Plaintiff makes no specific arguments concerning the ALJ's rejection of Dr. Nestor's opinion, conceding that "more extensive treatment" was provided by Dr. Moon. (Doc. 18 at 13).

that Plaintiff "gets easily overwhelmed and frustrated, which increases her pain, which in turn increases her depressive symptoms"; Doc. 9-8 at 79, 1/25/08 note that Plaintiff "has been under a lot of stress lately which has increased her pain, which in turn has increased her symptoms of depression."). In his February 2008 assessment, Dr. Moon reiterated that Plaintiff's chronic pain led to her depression, and that "her pain level ... has become more frustrating and more debilitating to her, which in turn has increased her depression. The increase in depression, in turn, has made it harder for her to cope with the pain and the physical limitations." (Doc. 9-8 at 28).

Dr. Moon's records reflect a consistent and continuing decrease in Plaintiff's activity level, corresponding with an increase in the severity of her symptoms over time. (*See, e.g*, Doc. 9-8 at 119, 5/06 report of inability to drive at times, reduced ability to shop, and inability to participate in other activities; Doc. 9-8 at 108-112, 1/8/07 report of loss of activities, lack of energy, slow gait, and evidence of pain, with GAF score of 49; Doc. 9-8 at 86, 1/28/08 report of continued depression resulting from "pain and physical limitations" with notation that "[s]ometimes she [has] a hard time getting up in the morning, showering, or bathing.").

Dr. Moon noted that even with treatment, Plaintiff continued to be depressed. (Doc. 9-8 at 79). Her daily activities depended on the amount of pain she was experiencing. Plaintiff had to cancel multiple appointments due to pain or lack of energy and motivation associated with her depressive symptoms. (*Id.*).

Although the ultimate determination of disability is reserved to the Commissioner, Dr. Moon's opinions were entitled to "controlling weight" to the extent they were "well-supported." By contrast, "if the treating physician's opinion is not supported by objective

6

medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *see also* 20 C.F.R. §1527(d)(2).

Dr. Moon opined that Plaintiff would meet or equal a Listed impairment. In addition, Dr. Moon provided multiple opinions concerning Plaintiff's functional abilities in a workplace setting. As discussed below, support for Dr. Moon's opinions is found in his written assessments, correspondence, and clinical notes.

On February 19, 2008, Dr. Moon wrote that Plaintiff would be unable: (1) to be prompt and regular in attendance; (2) to respond appropriately to work pressures; (3) to meet productivity and accuracy standards; (4) to complete a normal work day or work week; (5) to behave in an emotionally stable manner; (6) to relate predictability in social situations; (7) to demonstrate reliability; (8) to maintain concentration and attention for 2 hour segments; or (9) to accept instructions and respond appropriately to criticism. (Doc. 9-8 at 38-42). Dr. Moon further stated that Plaintiff was "marked[ly] restricted in daily living, in maintaining social functioning, and in concentration, persistence or pace. (Doc. 9-8 at 42). Curiously, in another portion of his assessment from the same date, Dr. Moon described Plaintiff as having "good" or "fair" abilities in most work-related adjustment areas, rating Plaintiff's ability as "poor or none" in only one area - the ability to deal with work stresses. (Doc. 9-8 at 43). Dr. Moon opined that if Plaintiff did attempt to return to work, she would decompensate from a psychological perspective and her depression would increase due to her pain level increasing with the activity associated with work. (*Id.* at 39)

In a letter dated March 19, 2008, Dr. Moon reiterated his opinions that Plaintiff would be "unable to be prompt in attendance," and would be "unable to complete a normal

workday" on a consistent basis due to pain and depression.  (Doc. 9-8 at 79).  In two subsequent (and identical) letters dated April 23, 2008 and May 9, 2008, Dr. Moon expressed his disagreement with an earlier assessment, performed in connection with Plaintiff's worker's compensation claim, that concluded that Plaintiff could return to work. In the identical letters, Dr. Moon again states that Plaintiff "is not capable of any renumerative employment" until such time as her condition "is stabilized."  He further opines that Plaintiff requires much greater and more frequent psychiatric treatment than that recommended by the worker's compensation assessment.  (Doc. 9-8 at 65, 72).

Few of Dr. Moon's records support the Defendant's non-disability finding, although two records in August and October of 2007 suggested that Plaintiff's condition was improving, at least temporarily (Doc. 9-8 at 92, 95).  Additional records from Dr. Moon include multiple opinions concerning his "guarded" prognosis, reference the fact that Plaintiff's symptoms that have "become more severe," and reiterate that Plaintiff "would be unable to complete a normal workday." (Doc. 9-8 at 47, 54, 58, 61-62).

In his decision, ALJ Armstead first rejected Dr. Moon's conclusion that Plaintiff's symptoms were severe enough to meet or equal a Listed impairment.

> [W]ith respect to Dr. Moon, his opinion that the claimant's psychiatric symptoms are of Listing level severity are found to be inconsistent with the infrequency with which he saw her.  Such infrequent visits would be for maintenance, rather than therapeutic services.  His opinion is also unsupported by the limited chart notes supplied.  The opinion is also inconsistent with his responses to a check list of categories involving making work adjustment, making performance adjustments, and making social adjustments.  The only category in which the psychiatrist gave the claimant a rating of "poor/none" was in the area of dealing with work stressors.  In all other areas, his rating range from "unlimited/very good" to "fair."

(Doc. 9-2 at 33-34).  Thus, although the ALJ's analysis focused on Dr. Moon's opinion that

Plaintiff's symptoms met or equaled a Listed impairment, the ALJ also rejected all of Dr. Moon's assessments of Plaintiff's functional abilities.

Like the ultimate determination of disability, the determination of a plaintiff's residual functional capacity ("RFC") is reserved to the Commissioner. *See* 20 C.F.R. §§404.1527(d)(2), 1527(e)(2). An ALJ must give controlling weight to the opinions of treating physicians, but where conclusions are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284, 287 (6th Cir. 1994).

Plaintiff argues that the ALJ's wholesale rejection of Dr. Moon's multiple opinions reflects four errors: 1) a failure to reference Plaintiff's treatment with the psychotherapist who worked with Dr. Moon; 2) a misinterpretation of Plaintiff's treatment regimen; 3) a failure to provide "good reasons"; and 4) over-reliance upon state agency consultants. The first three errors are closely related and will be discussed together, while the fourth error is more distinct. In addition these four errors, Plaintiff briefly references a fifth error - that the ALJ improperly rejected Dr. Moon's opinions concerning the combination of Plaintiff's chronic pain and depression.

### a. Therapist Berlin and the "Good Reasons" Rule

This Court agrees that the ALJ erred in failing to acknowledge the records of Plaintiff's treating psychotherapist, Audrey Berlin, MS, LPC. That error in turn led to a mischaracterization of the frequency and extent of Plaintiff's mental health treatment. Due to his mischaracterization of the record, the ALJ's reasons for rejecting Dr. Moon's assessment in total do not satisfy the regulatory requirement that an ALJ provide "good reasons" for rejecting the opinions of treating physicians.

9

Social Security regulations require consideration of *all* medical opinions, not merely those of treating physicians.  *See* 20 C.F.R. §1527(d)("Regardless of its source, we will evaluate every medical opinion we receive.").  Ms. Berlin is a psychotherapist in the same office as Dr. Moon; she treated Plaintiff for approximately the same time period, and co-signed some of the correspondence signed by Dr. Moon.  (*See, e.g.*, Doc. 9-8 at 74-75). As a psychotherapist, Ms. Berlin is not an "acceptable medical source" such as a treating physician or licensed psychologist; therefore, her opinions are not entitled to "controlling weight." *See* 20 C.F.R. §§404.1527(a)(2); 404.1527(d), 416.927(a)(2), 416.927(d). Nevertheless, the ALJ could not simply ignore her opinions.  SSR 06-03p, 2006 WL 2329939, provides that opinions from medical sources who are not "acceptable" medical sources should still be considered under the factors set forth in 20 C.F.R. §404.1527(d)(2), including "how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion."  *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007)(citations omitted).

 To be fair, most of Ms. Berlin's clinical records do not evidence opinions, so much as clinical observations.  To the extent that a medical source does not express an opinion concerning a claimant's functional limitations, the ALJ's failure to reference that medical source would not necessarily be error.  However, in this case Ms. Berlin's records provide significant additional clinical support for the opinions of Dr. Moon.  In addition, both Ms. Berlin's and Dr. Moon's records are inconsistent with the ALJ's finding that Plaintiff sought mental health treatment infrequently, and only for "maintenance."

The records reflect that the focus of treatment from Dr. Moon, a psychiatrist, was management of Plaintiff's symptoms through medication.  Simultaneously, Dr. Moon

prescribed individual psychotherapy with Ms. Berlin. (Doc. 9-8 at 112). This Court is hard-pressed to describe Plaintiff's treatment as "infrequent" or solely for "maintenance."

Plaintiff was first prescribed an anti-depressant by her primary care physician. It is true that Plaintiff's initial contacts with Dr. Moon were sporadic, beginning with a consultation in May of 2006 at which Dr. Moon first recommended more intensive treatment (Doc. 9-8 at 121), with a second follow-up visit not occurring until January of 2007. (Doc. 9-8 at 108-112). However, throughout 2007 and 2008, the frequency of Plaintiff's treatment increased substantially.[2] Plaintiff averaged nearly two visits per month when records from both Ms. Berlin and Dr. Moon are considered, and records reflect that she was scheduled for more frequent treatment but was unable to attend due to a combination of insurance issues, chronic pain, and depression. (*See* Doc. 9-2 at 86; *see also* Doc. 9-8 at 46, 75, 78-80, 185).

The ALJ's rejection of Dr. Moon's opinion was partially based upon the alleged infrequency of treatment, and overlooked entirely the records of Ms. Berlin. Although the ALJ referred to "limited" chart notes, examination of the records reveals substantial supporting notes and correspondence from both Dr. Moon and Ms. Berlin explaining the course of treatment and support for Dr. Moon's findings. Dr. Moon's notes and reports include clinical observations relating both to Plaintiff's mental health and signs of obvious physical discomfort. (*See* Doc. 9-8 at 119). The ALJ correctly notes what appears to be an internal inconsistency in Dr. Moon's February 19, 2008 report, but fails to discuss Dr. Moon's multiple additional (and consistent) assessments of Plaintiff's functional limitations.

---

[2] There is some evidence in the record that Plaintiff's limited initial treatment with Dr. Moon was due to insurance issues and/or delayed approval from an ongoing worker's compensation claim.

ALJ Armstead also rejected Dr. Moon's assessment based upon his determination that Plaintiff continued to engage in activities of daily living such as caring for her son, completing household chores, shopping, driving, and attending religious services on a regular basis.  (Doc. 9-2 at 35).  However, there is no evidence in the record that this level of activity, last reported to a consulting psychologist in January of 2006, continued beyond that point in time or at any point after Plaintiff was diagnosed with depression.  In fact, all record evidence is to the contrary.  Medical records, including those of second examining consultant, treating physicians including Dr. Moon and pain control specialists, as well as Plaintiff's own testimony, reflect that Plaintiff's activities significantly decreased over time. By the date of the September 2009 hearing, Plaintiff testified that she had not attended church in two years, was required to spend at least 20% of her day in a reclining position, and rarely left the house due to an inability to get out of bed on a consistent basis.  (Doc. 9-2 at 81-83).  Taken as a whole, the errors in the ALJ's analysis amount to a lack of "good reasons" for failing to provide those opinions "controlling" weight.   *See Rogers v. Commissioner*, 486 F.3d 234, 242-243 (6th Cir. 2007); *see also Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009).

### b.  Weight Given to Consulting Physicians

Plaintiff also argues that the ALJ improperly rejected Dr. Moon's opinions in favor of the opinion of a non-examining consulting psychologist, Melanie Bergsten, Ph.D., with unspecified additional weight given to two examining consultants.  In his opinion, the ALJ determined that Plaintiff has but a single non-exertional mental limitation, based on Dr. Bergsten's opinion.  Citing *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 408-409 (6th Cir. 2009), Plaintiff argues that the ALJ's reliance on Dr. Bergsten was error,

because Dr. Bergsten completed her records review prior to Plaintiff's treatment with Dr. Moon and Ms. Berlin.

The regulatory framework of the Social Security Act provides guidelines not only for the evaluation of the opinions of treating physicians, but for the evaluation of the opinions of consultants.  In general, the opinions of a consulting physician who has actually examined the plaintiff will be given more weight than that of a non-examining consultant, with treating physicians alone to be given controlling weight.  *See* 20 C.F.R. §404.1527(d)(1) and (d)(2).  Of course, these regulatory presumptions remain subject to individual variations.  Thus, in *Blakley* the Sixth Circuit reiterated the principle that "[i]n appropriate circumstances, opinions from State agency medical...consultants...may be entitled to greater weight than the opinions of treating or examining sources." (*Blakley*, 581 F.3d at 409, quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)); *but see Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(Rejecting a medical opinion solely because a consulting physician disagrees is not an adequate basis for rejecting a treating physician's opinion).

In *Blakley,* the court reversed on grounds that the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment...by Blakley's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Blakley*, 581 F.3d at 409 (*quoting Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007)).  Under *Blakley*, then, an ALJ may choose to credit the opinion of even a non-examining consultant who has failed to review a complete record, but he should articulate his reasons for doing so.  If he fails to provide sufficient reasons, his opinion still may be affirmed if substantial

13

evidence supports the opinion and any error is deemed to be harmless or *de minimis*.

In this case, the ALJ acknowledged that the consultants evaluated Plaintiff and her records prior to her treatment from Dr. Moon.  The difficulty this Court has with the ALJ's analysis is that he relied too heavily on the non-examining Dr. Bergsten's report, which itself contained errors, without adequate justification for that reliance.   In perhaps the most critical error, the ALJ failed to include functional limitations in Plaintiff's mental RFC that were found both by an examining consultant and by Dr. Bergsten.  Moreover, as noted by Plaintiff, it remains unclear what weight the ALJ gave to the reports of the two consulting psychologists who examined Plaintiff.

In his opinion, the ALJ first discusses the January 20, 2006 consulting examination of state agency psychologist, George Schulz, Ph.D. ("Dr. Schulz").  (Doc. 9-8 at 17-22). Dr. Schulz's examination was performed prior to the date Plaintiff filed her disability claim, just a few months after her alleged onset of disability.  Although Dr. Schulz found Plaintiff to be "minimally" impaired, at that point in time Plaintiff was attempting to return to work (ultimately without success), and could engage in a wide range of activities, including being able to see her son off to school in the mornings, complete household chores, attend church services on a weekly basis, go grocery shopping, and volunteer for the Ohio Reads program one hour per week.  (Doc. 9-8 at 7).  Based on his evaluation, Dr. Schulz diagnosed Plaintiff with an anxiety disorder.  (*Id.* at 21-22).  Notably, Dr. Schulz did not find any depression, as his examination apparently occurred prior to that diagnosis and Plaintiff's onset of more severe symptoms.[3]

---

[3] Plaintiff reported sleeping only 3 hours per night due to pain, and that she had begun to experience increased psychiatric symptoms just seven days prior to Dr. Schulz's examination.  (Doc. 9-8 at 5).

Months later, a second consulting examination by state agency psychologist Nicole Leisgang, Psy. D., reveals a far different picture.  On December 2, 2006, Dr. Leisgang suggested that Plaintiff's complaints of pain, headaches and fatigue could be indicative of somatization, and diagnosed Plaintiff with moderately severe major depressive disorder. (Doc. 9-7 at 128-133).  Independent of but consistent with Dr. Moon's report, Dr. Leisgang rated Plaintiff's Global Assessment of Functioning ("GAF") score at 49 based upon the severity of her symptoms.[4]  By the time of  Dr. Leisgang's examination, Plaintiff reported that she rarely left her home, and that her activity level had significantly decreased.  Her brief attempt to return to work had failed, she no longer performed volunteer work, and she was having greater difficulty with household chores, requiring assistance.  She reported being "stuck in bed" on "bad days."  (Doc. 9-7 at 128-130).  She also experienced suicidal ideation, and  was "currently" seeing a psychologist.  (*Id.* at 130).  Also like Dr. Moon, Dr. Leisgang noted evidence of physical pain, not only in Plaintiff's reports but in her facial expressions, slowed rate of speed, and frequent shifts in position during the interview. (*Id.*).

Consistent with Plaintiff's symptoms, Dr. Leisgang found significant functional impairments.  She assessed Plaintiff's ability to relate to others as "mildly to moderately" impaired, her ability to maintain concentration, persistence or pace as "moderately" impaired, and her ability to withstand normal work stressors as "moderately to seriously" impaired.  (Doc. 9-7 at 132-133).   She noted that in addition to the generally slowed pace

---

[4] The GAF score is assigned to a person after consideration of all psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness.  A GAF score of 41-50 indicates that a person has serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or serious impairment in social or occupational functioning (e.g., no friends and unable to keep a job). *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Edition, 34 (2000).

caused by Plaintiff's depression, Plaintiff's attention and concentration skills "may deteriorate over extended time periods, slowing her performance in completing simple repetitive tasks." (*Id*.). Finally, like Dr. Moon, Dr. Leisgang opined that Plaintiff's inability to tolerate work stress "may lead to such increased depressive symptomatology as crying, withdrawal, slowed work performance, and suicidal ideation." (*Id.* at 133).

The ALJ briefly describes the reports of both Drs. Schulz and Leisgang, but never explains what if any weight he was giving to those reports in assessing Plaintiff's mental RFC. Instead, the ALJ's opinion relies upon the opinions of non-examining consultants who allegedly reviewed the opinions of the examining consultants. Although the ALJ does not identify the non-examining consultants by name, it is clear that he relied most heavily on the opinion of Dr. Bergsten.[5] The sole limitation concerning Plaintiff's mental impairment found by the ALJ was taken virtually verbatim from Dr. Bergsten's report. The ALJ (per Dr. Bergsten) determined that Plaintiff was limited to "simple and complex tasks that are fairly static in nature - changes [that] can be easily explained." (Doc. 9-2 at 32 and Doc. 9-7 at 153).

As a non-examining consultant, Dr. Bergsten appears to have based her report almost exclusively on the report of Dr. Leisgang.[6] Regarding Plaintiff's functional limitations, Dr. Bergsten simply states: "Weight heavily given to CE [consulting examiner Dr. Leisgang]" as to all functional assessments. She expresses mild disagreement only

---

[5] As discussed below, Dr. Bergsten reviewed Dr. Leisgang's report and provided her own functional capacity assessment that largely agreed with Dr. Leisgang's assessment. The record reflects that Alice Chambly, Psy.D., also reviewed and "affirmed" the assessment of Dr.Bergsten, without conducting a separate examination of Plaintiff. (Doc. 9-7 at 224).

[6] Dr. Bergsten's report contains no indication that she reviewed even Dr. Moon's initial assessment. She refers *only* to the consulting assessment of Dr. Leisgang.

with Dr. Leisgang's finding that Plaintiff's ability to withstand stress is "moderately to severely" impaired, to the extent that Dr. Bergsten found only "moderate" impairment in that area.  However, Dr. Bergsten's report reflects internal inconsistency and disagreement with Dr. Leisgang's assessment in one other area.   Dr. Leisgang repeatedly references Plaintiff's slowed pace, and found moderate impairment concerning concentration, persistence or pace even for simple, repetitive tasks.  Despite expressed deference to Dr. Leisgang, Dr. Bergsten inconsistently concluded (without discussion) that Plaintiff is "able to work at a steady pace to perform simple and complex tasks of a familiar nature."  At the same time, Dr. Bergsten agreed with Dr. Leisgang that Plaintiff has moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace, the latter of which would appear to preclude the unimpeded "ability to work at a steady pace." (*See* Doc. 9-7 at 147).

This Court notes that, aside from obviously preceding most of Plaintiff's psychiatric treatment, Dr. Bergsten's opinion also contains at least one factual error.  Dr. Bergsten's slight disagreement with Dr. Leisgang was based in part on her observation that Plaintiff had (at the time) been prescribed only a single antidepressant by her primary care physician, and "is in no other Tx."  (Doc. 9-7 at 153).  However, Dr. Leisgang's report clearly states that Plaintiff "has seen a psychologist in the past" and "currently sees a psychologist."  (Doc. 9-7 at 130-131).   Dr. Leisgang's report also reflects a significant decrease in Plaintiff's activity level, a fact not referenced by Dr. Bergsten.

The ALJ's failure to include additional mental limitations in Plaintiff's RFC appears to be based upon a misreading of the whole of Dr. Bergsten's opinion, as well as improper deference to portions of that opinion without adequate explanation.  Both Dr. Leisgang and

Dr. Bergsten agreed that Plaintiff would have moderate difficulties in maintaining concentration and pace. A failure to find any limitations concerning concentration and pace, not to mention the lack of discussion of Plaintiff's potential inability to sustain work, results in a lack of substantial evidence to support the ALJ's non-disability finding.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *See Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 516 (6th Cir. 2010)(where medical source opinions specifically limited Plaintiff's ability to sustain attention and imposed restrictions in pace, speed and concentration, ALJ's "streamlined" hypothetical omitting those restrictions was insufficient). As another court put it, a failure to include such a limitation is important because a "Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." *See Edwards v. Barnhart*. 383 F. Supp.2d 920, 930-931 (E.D. Mich. 2005)(hypothetical limiting claimant to "jobs entailing no more than simple, routine, unskilled work" not adequate to convey moderate limitation in ability to concentrate, persist, and keep pace); *accord Ramirez v. Barnhart*, 372 F.3d 546, 552-553 (2d Cir. 2004)(hypothetical limiting claimant to simple, repetitive, one to two step tasks not sufficient to encompass deficiencies in concentration, persistence and pace); *Whack v. Astrue*, 2008 WL 509210 at *8 (E.D. Pa. 2008)(unpublished)(citing cases for the proposition that hypothetical restrictions of "simple" or "low-stress" work are insufficient where claimant has moderate deficiencies in concentration, persistence or pace); *but cf. Smith v. Halter*, 307 F.3d 377 (6th Cir. 2001)(where ALJ relied on testimony that characterized plaintiff's concentration problems

as minimal, ALJ's translation of condition into hypothetical that included restrictions against high quotas, complexity and stress was sufficient).

### c. Rejecting the Effect of Combined Impairments

The ALJ committed additional error by failing to fully evaluate Plaintiff's limitations as a whole, rather than as if Plaintiff's depression is completely separate from her back pain. The ALJ dismissed "counsel's attempt to muddy the waters by phrasing the questions in terms of a combination of the claimant's physical and mental impairments," concluding that Plaintiff's limitations "relate primarily to mental, not physical impairments." (*Id*.). (Doc. 9-2 at 33).

That type of analysis is in contradiction with the Social Security Act and governing regulations. *See* 42 U.S.C. §423(d)(2)(B); 20 C.F.R. §404.1523. Dr. Moon clearly opined that Plaintiff's depression intensified her experience of her chronic pain, and that the two conditions together create an incapacitating cycle of pain and depression. Treating physician Dr. Nestor opined similarly that Plaintiff was disabled not due solely to mental impairments, but due to the combination of depression and physical ailments. Even the medical expert (a rheumatologist) testified at the hearing that although the objective evidence did not support Plaintiff's level of pain, "there are other reasons for this," alluding to psychiatric issues. (Doc. 9-2 at 94-95, 97-99). The ME further testified that Plaintiff's extensive pain management had been "thorough" but ineffective to the extent that she continues to experience severe pain in excess of pain that can be attributed to physical findings alone. (*Id.* at 92-94, 97-98). Disregarding this testimony, the ALJ insisted upon independently evaluating Plaintiff's physical and mental limitations, without considering the opinions of physicians who very clearly opined that the sum of Plaintiff's depression and

19

chronic pain exceeded the limitations caused by those impairments individually. Compounding the error, the ALJ restricted the ME's testimony to evaluation of Plaintiff's physical limitations and to her reports of pain supported by objective physical evidence. (Doc. 9-2 at 92, 99). *Accord Walker v. Secretary of Health and Human Services*, 980 F.2d 1066 (6th Cir. 1992)(reversing non-disability finding where ALJ failed to consider combined effect of plaintiff's back injury and depression, as required by 20 C.F.R. §404.1523).  In addition, the ALJ's discounting of Plaintiff's functional restrictions over time as "based solely upon her changed representations of symptoms," (Doc. 9-2 at 31),does not make a great deal of sense, given the nature of psychiatric evidence. *Id.*, 980 F.2d at 1071 n.3 ("[T]he ALJ should not have discounted psychiatric evidence in such a cavalier manner simply because it was based on 'subjective complaints...'").

## 2. Credibility Assessment and Evaluation of Pain

The failure of the ALJ to consider evidence of Plaintiff's impairments as a whole also impacted his credibility assessment - the subject of Plaintiff's second statement of error. Plaintiff argues that ALJ Armstead failed to consider all of the factors listed in 20 CFR. §§404.1529, 416.929 and Social Security Ruling 96-7p.  With respect to Plaintiff's pain level, the ALJ ignored the medical expert's testimony that Plaintiff's complaints of incapacitating pain were consistent throughout her extensive pain management treatment. (*See* Doc. 9-2 at 100-103, ME testimony that Plaintiff's experience of pain, as reported to her treating physicians would reasonably preclude work).  Instead, the ALJ improperly focused <u>only</u> on the lack of physical findings that could objectively support Plaintiff's pain level.

In evaluating complaints of disabling pain, the fact-finder will first examine "whether

there is objective medical evidence" that "confirms the severity of the alleged pain" or "can reasonably be expected to produce the alleged disabling pain."  *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  "[I]f disabling severity cannot be shown by objective medical evidence alone, the Commissioner will also consider other factors, such as daily activities and the type and dosage of medication taken." *Id.* (citing 20 C.F.R. §404.1529(c)(3)).

Although the ALJ noted that Plaintiff's documented physical problems did not support the level of pain she claims to experience, he failed to discuss her years of treatment for chronic pain following failed back surgery in July 2004, including epidural injections, narcotic pain medications, muscle relaxers, and a spinal cord stimulator, with no sustained improvement of her pain over time, according to records.   He included no postural limitations attributable to pain, even though Plaintiff testified that she had been prescribed the use of a cane by her pain specialists, and had used her cane consistently for at least two years.  (Doc. 9-2 at 110).  The ALJ also failed to reference Plaintiff's attempts to return to work, or her long work history.  *See Allen v. Califano*, 613 F.2d 139, 147 (6th Cir. 1980).  The ALJ emphasized Plaintiff's daily activities prior to her diagnosis of depression.   However, "minimal daily functions are not comparable to typical work activities."  *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).  As in *Rogers*, the ALJ failed to note or comment upon the significant decrease in Plaintiff's activity level or the fact that multiple opinions - from treating and consulting physicians alike, including the testifying ME - noted her obvious and chronic physical discomfort.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.  *Rogers,* 486 F.3d at 247 (citations omitted).

Of course, the ALJ's credibility determination must still be supported by substantial evidence; he is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers,* 486 F.3d at 247. When a claimant's complaints are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.* When evaluating complaints of chronic pain, credibility is "a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis." *Walters,* 127 F.3d at 531.

In this case, ALJ Armstead discussed various factors that caused him to question Plaintiff's credibility. He noted that there is no evidence that Plaintiff has required emergency room treatment or hospitalization for psychiatric complaints.[7] (Doc. 9-2 at 35). However, that observation is undercut by the ALJ's mischaracterization of the extent of Plaintiff's mental health treatment. The ALJ also points out that Plaintiff did not seek significant mental health treatment until after she had applied for disability benefits. Again, as discussed above, the records reflect that Plaintiff's chronic pain directly led to the onset of depression over time. That Plaintiff's psychiatric symptoms increased over time does not necessarily mean that her mental health symptoms were manufactured.

---

[7] Plaintiff did seek Emergency Room treatment for an episode of "uncontrollable" pain. She also had at least one "emergency" psychiatric appointment on 3/25/08. (Doc. 9-8 at 74-75).

The ALJ focused on Plaintiff's reports of her activities of daily living, but the evidence in the record - from clinical notes during Plaintiff's treatment with Dr. Moon to Plaintiff's own testimony - reflects a significant decrease in those activities over time.   Although Plaintiff was able to perform a wide range of activities when she first submitted a disability application in 2006 (Doc. 9-7 at 19), by December of 2006 she had decreased her level of activity substantially, and subsequently was unable to engage in many if not most of her former activities due to chronic pain and depression.

Last, the ALJ discredited Plaintiff after finding that she "did not stop working because of her alleged impairments" but instead "advised an examining source that she [was] fired from her job as a hospital nurse in February 2006."  (Doc. 9-2 at 34).   This again mischaracterizes the record.  The exhibit to which the ALJ refers (Doc. 9-7 at 129) reflects that Plaintiff reported that the hospital fired her for "abandonment" at a time when she was on disability for her medical/psychological condition.  The same record explains that Plaintiff was then in litigation for "unlawful termination."   Other records note Plaintiff's consistent reports to her providers that the alleged "abandonment" resulted when the hospital claimed to be unable to reach her by telephone.  (Doc. 9-8 at 79, 88, 108).  Plaintiff reported that she was in temporary living quarters at the time, having lost her home and telephone service due to her dire financial situation, as a direct result of her disability.  (*Id.*; Doc. 9-8 at 115).

The ALJ noted other inconsistencies, including discrepancies in the severity of Plaintiff's alleged seizure disorder and alleged fibromyalgia.[8]   On remand, such

---

[8]Dr. Leisgang noted evidence of somatization, and the ME also testified that Plaintiff's report of fibromyalgia is a severe symptom of depression.  (Doc. 9-2 at 91).

23

discrepancies, combined with observations concerning Plaintiff's demeanor and other factors, could result in the same credibility assessment.   Were this a case in which no other reversible error existed, the errors noted would present a much closer issue, in terms of warranting remand on their own accord.  This Court recognizes that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters,* 127 F.3d at 531.  A credibility determination cannot be disturbed "absent a compelling reason."  *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001).  That said, because remand is required in this case based upon other errors, and given the influence of those errors on the ALJ's credibility assessment, the Court will instruct the ALJ to re-evaluate Plaintiff's credibility as part of the remand.

### III.  Conclusion and Recommendation

Plaintiff advocates for outright reversal and an award of benefits, but moves in the alternative for remand.  I conclude that remand will provide appropriate relief on the record presented.

A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary.  *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted).  In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1.  The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g);

2.  On remand, the ALJ should carefully reevaluate: a) the weight to be given to the opinions of treating physicians, including but not limited to Dr. Moon; b) all medical opinions including Plaintiff's psychotherapist and pain control specialists; c) the weight to be given to each consulting opinion; d) Plaintiff's credibility concerning her allegations of disabling pain, as more particularly instructed herein;

3.  As no further matters remain pending for the Court's review, this case be **CLOSED.**

                                                              */s Stephanie K. Bowman*
                                                              Stephanie K. Bowman
                                                              United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

HEATHER McCLANAHAN,                               Case No. 1:10-cv-651

      Plaintiff,                                    Spiegel, J.
                                        Bowman, M.J.

     v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).